[Philadelphia, March 27, 1830.]

The President, Managers and Company of the Schuylkill Navigation Company *against* KITTERA.

IN ERROR.

The appeal given by the eleventh section of the act of the 8th of *March*, 1815, incorporating the Schuylkill Navigation Company, from the report of appraisers, or a jury, assessing damages, is analogous to an appeal from the award of arbitrators, and is to be governed and regulated in the same manner.   Consequently, if the company appeals, and obtains a reduction of the amount of the report, the complainant is not entitled to recover costs accruing since the appeal.

But when the appeal is tried by a jury of an adjoining county, not bordering on the river Schuylkill, under the provisions of the supplemental act of the 1st of *February*, 1821, and the company succeeds in reducing the amount of damages reported by the first jury, they are bound to pay the costs of the jury brought from the adjoining county.

On a writ of error to the Court of Common Pleas of *Montgomery* county, the record presented the following case:—

The defendant in error, *Thomas Kittera*, Esq., instituted proceedings under the provisions of the act of assembly of the 8th of *March*, 1815, against the President, Managers and Company of the *Schuylkill* Navigation Company, in which he complained of having been injured by a dam, erected and raised by them at *Flat Rock*, in the river *Schuylkill*, by means of which, the water of that river was swelled into the tail race of his mill, and waterworks at the mouth of *Mill-Creek*, in the county of *Montgomery*, and his lands inundated.   A jury having been summoned upon a *Venire*, directed to the sheriff of *Montgomery* county, in order to ascertain and report to the Court of Common Pleas what damages, if any, had been sustained by the complainant, by reason of the alleged injury, they reported the damages to be twelve hundred dollars. The company thereupon appealed to the court, under the proviso of the eleventh section of the act of assembly, and declared, on oath, according to the first section of the supplement thereto, passed the first of *February*, 1821, that they apprehended

(The President, Managers, and Company of the Schuylkill Navigation Company *v.* Kittera.)

injustice might be done by a jury to be summoned from the county of *Montgomery*, where the premises were situated. The court then awarded a *Venire* to the sheriff of *Bucks* county, requiring him to summon twelve persons residing therein, (who had been selected, agreeably to the directions of the said supplementary act,) to go upon the premises where the injury was alleged to have been done, and having viewed the same; to appear at the next Court of Common Pleas of the county of *Montgomery*, for the trial of the appeal. In obedience to this writ, the sheriff of *Bucks* county returned a jury, who had viewed the premises, and who, on the trial before the court, found a verdict for the complainant for eight hundred dollars, for which, the court rendered judgment. The company paid this sum to the complainant, but refused to discharge the daily pay and mileage of this jury, the complainant's bill, and the other costs, (except its own,) which had accrued since the appeal. The Court of Common Pleas decided, " That the plaintiff having succeeded in obtaining a verdict in his favour for eight hundred dollars, was entitled to costs, and that the defendants had been unsuccessful in defeating the plaintiff's recovery—although they had diminished the amount found by the sheriff's inquest from twelve hundred dollars to eight hundred dollars, and the defendants were, therefore, the unsuccessful party, within the meaning of the act, who were bound to reimburse the county for the daily pay and mileage of the jury."

The errors assigned by the company were:—

" 1. That the court erred in entering judgment against the defendants below for costs, the said defendants having been the successful party on the appeal entered by them, and not liable to any costs subsequent to such appeal.

" 2. In refusing to enter judgment against the defendants below without costs, and to set aside the writ of *Fieri Facias*, which issued against them for the costs subsequent to the appeal.

" 3. In deciding, that the defendants, although they had diminished the amount found by the sheriff's jury from twelve hundred to eight hundred dollars, are the unsuccessful party, within the meaning of the act, who are bound to reimburse the county the daily pay and mileage of the jury.

" 4. In overruling the exceptions taken by the defendants to the bill of costs, as taxed by the prothonotary."

*Tilghman* and *Binney*, for the plaintiffs in error.—Three questions are raised by this record:

1. Is the complainant below entitled to costs which accrued subsequent to the appeal?

2. Are the defendants below, under the circumstances of the case, and the provisions of the law, bound to pay the expenses of the *Bucks* county jury, who tried the appeal?

(The President, Managers, and Company of the Schuylkill Navigation Company *v.* Kittera.)

3. Can the execution, which has been issued by the complainant below and levied, be supported ?

1st. Costs are the creatures of statutes, and consequently, the complainant below must show some statute, giving him a right to those which he claims. This was a statutory proceeding altogether, in which peculiar advantages are secured to the complainant, particularly in the precedence given to it of all other causes on the trial list. His claim to costs, therefore, arises upon the act of assembly, or not at all. If the act had merely given an appeal, without more, the company clearly would not have been answerable for costs; for it is a general principle, that where an appeal is given, and the appellant succeeds, the appellee is not entitled to costs. The finding of the first jury was a judgment, upon which an execution might have issued if no appeal had been taken: That judgment having been reversed on appeal, upon the common law rule, each party must pay his own costs. But the act of assembly of the 8th of *March,* 1815, incorporating this company, refers to a standard by which appeals are to be governed. The eleventh section, which prescribes the mode in which damages shall be assessed, gives to either party an appeal, " in the same manner as appeals are allowed in other cases." The language of this part of the section is not clear; it must, therefore, be referred for its interpretation to the context, and if that will not supply the true meaning, to the general current of legislation on similar subjects. It has long been a favourite measure of our legislature, to appoint in the first instance, a subordinate tribunal; taking care, however, to secure a trial by jury, if it should be desired; and they have gone on the principle, of giving to the award of the primary tribunal the effect of a judgment. Two modes of correcting the errors of the first tribunal have been adopted; *first,* by giving an appeal on certain terms to the dissatisfied party; and *secondly,* by the imposition of costs on the party who has improperly recovered more than he is entitled to. Though the appellant is made to pay the costs up to the time of appealing, on the presumption, that the award is right; yet, if he succeeds in showing, that the award was in part wrong, he is not subject to the expense of litigation consequent upon the appeal. This is a uniform principle. The whole theory of costs is, that they are an amercement of the party who is found to be in the wrong. From the whole language of the act of assembly of 1815, it is apparent, that the legislature had in view appeals from the award of arbitrators, and intended, that appeals under that act should be governed by the same rules. They bear no resemblance to appeals from the Orphans' Court, or from the Court of Common Pleas, in cases of divorce. They are very analogous to appeals from the decisions of justices of the peace, but much more so to appeals under the arbitration law. This interpretation has been given to the act of 1815, by this court, in deciding, that under the act of the 22d of *March,* 1817, the *Schuylkill* Na-

vigation Company were bound to give security on entering an appeal. *The Schuylkill Navigation Company* v. *Thomas*, 13 *Serg. & Rawle*, 431. There is no analogy to an appeal of any other kind. Where an appeal is given in the *same manner* as in other cases, if the manner of an appeal, under the arbitration law, was in the view of the legislature at all, that *manner* must hold throughout. If, by analogy to that law, an affidavit must be made, and security given, as undoubtedly they must, these steps must regulate all subsequent proceedings. The costs must follow the same guide. No other law is at all in accordance with the case, except the arbitration law, and that fits it exactly. If the legislature have omitted to complete the system, it is not legislation in this court to do so. It never could have been intended, that the company should pay the opposite party costs for attending, while he is shown to be in the wrong. This would contradict the whole theory of costs. No case can be found, in which the successful pays costs to the unsuccessful party. Upon the opposite principle, if the appellant, succeeds in reducing the damages from twenty thousand dollars to one cent, he would be compelled to pay costs to his adversary. As to appeals from decisions of the Orphans' Court, there is no principle on which the appellant, who obtains an abatement, can be compelled to pay costs. In the Orphans' Court, as in equity, costs are matter of discretion and conscience.

On an appeal under the act of assembly of 1815, incorporating the plaintiffs in error, what has been previously done, is not a nullity. If the appeal should be abandoned, clearly the first verdict would stand. The act does not say, the proceedings shall be *de novo,* but makes the first finding a judgment, which is inconsistent with the idea of the proceedings being *de novo.* The statute of *Gloucester* is not applicable to appeals, but to original suits. The legislature of *Pennsylvania* have adopted a system of their own as to costs on appeals from primary tribunals. *Landis* v. *Shaeffer,* 4 *Serg. &. Rawle,* 196. *Lewis* v. *England,* 4 *Binn.* 5. *Kimble* v. *Saunders,* 10 *Serg. & Rawle,* 193. *Downs* v. *Lewis,* 13 *Serg. & Rawle,* 198. *Grace* v. *Altemus,* 15 *Serg. & Rawle,* 133. *Flick* v. *Boucher,* 16 *Serg. & Rawle,* 373. *Lamb* v. *Clark,* 17 *Serg. & Rawle,* 366. *Gonzalus* v. *Liggitt,* 1 *Rawle,* 426. *Pratt* v. *Naglee,* 6 *Serg. & Rawle,* 299. *Alexander* v. *Holdship,* 13 *Serg. & Rawle,* 230.

2. The plaintiffs in error are not bound to pay the costs of the *Bucks* county jury. The act of the 1st of *February*, 1821, which changes the *Venire,* gives peculiar advantages to the complainant, and points out a peculiar mode of proceeding, which must be strictly pursued. The sheriff of an adjoining county, not bordering on the river *Schuylkill,* is to make out a list of thirty-six disinterested inhabitants of his bailiwick, from which the parties are to strike, until the number be reduced to twelve, who are to be summoned by

(The President, Managers, and Company of the Schuylkill Navigation Company *v.* Kittera.)

the sheriff, and to view the premises, and who are to receive one dollar and fifty cents per day for their attendance, both on the view and at court on the trial of the appeal, and ten cents per mile in going and returning, which daily pay and mileage are to be paid out of the county treasury, which is to be reimbursed by the *unsuccessful party.* The question then is, what is meant by the terms, the *unsuccessful party?* We say, clearly, the party who is unsuccessful on the appeal. That the company was successful on the appeal, cannot be denied, for they abated the damages found by the first verdict, one-third. If the whole of the first section be taken together, it will be found, that with the exception of the first clause as to notice, it relates exclusively to the trial of the appeal. The appeal alone is spoken of throughout; final success is nowhere mentioned. The jury are summoned to try the appeal; they are called into existence for that purpose alone. It was the only subject before the legislature when the law was proposed; and consequently, when the terms, unsuccessful party, were used, they could only have been used in reference to the subject matter of the law under consideration.

3. The execution cannot be supported. If it can, the money to be made by it will go into the pocket of the complainant, and not into the county treasury, as provided for by the act of assembly. The county might bring a suit against the company for these costs, and payment to the complainant would be no answer to it.

*J. Randall,* for the defendant in error.—It is a mistake to suppose, that the complainant enjoys peculiar privileges under the act incorporating the *Schuylkill* Navigation Company, and its supplements. On the contrary, the advantages are all on the side of the company. The act was passed under a strong feeling in favour of internal improvement, and was considered by many as a great grievance. The right to change the *venire,* is confined to the company, a privilege of an extraordinary character, which it is difficult to account for, except from the precipitancy with which, as appears from the journals, the law was passed. As to the advantage arising from a speedy trial being given to the complainant, the constitution declares, that no man's property shall be taken for public use without compensation, and in general, the compensation is given before the property is taken.

1. The act of incorporation says nothing about costs, but gives to either party an appeal in the *same manner* as in other cases. Admitting that the arbitration law furnishes the standard, as to the *manner* of the appeal, it does not follow, that it is to be governed by that law in all its consequences. It is said, this case is to be governed by the principles of an appeal from an award. In *Troubat* and *Haly's Practice,* there are six kinds of awards mentioned, from which an appeal lies—which is to be followed here? There are also two kinds of appeals from the judgment of a justice: one, where the

justice gives judgment himself; the other, where he enters judgment on an award of referees. There is also an appeal from the decrees of the Orphans' Court, and from the Court of Common Pleas in cases of divorce, and many other varieties of appeals, governed by different principles, to any of which the language of the act of 1815, would apply with as much propriety, as to appeals under the act regulating arbitrations. It is owing to the express provisions of the arbitration law, that costs cannot be recovered where the appellant succeeds in reducing the amount; but the act of 1815, contains no such provision. At common law, the party who finally succeeds, no matter how little, is entitled to costs. On appeals from justices, the exemption from costs on succeeding in the appeal, depends upon whether or not new evidence has been produced. Perhaps in this case, new evidence was given. The whole of the opposite argument has gone upon the supposed analogy between an appeal under the act of 1815, and one from the judgment of a justice, on the award of arbitrators, but as both these are the subjects of express and particular legislation, the analogy does not hold. The loss of costs by obtaining an abatement, is always the effect of statutory enactment. If, on an appeal from a decree of the Orphans' Court, this court sets aside the decree in part, the costs follow the partial decree, unless it be otherwise ordered. *Guier* v. *Kelly*, 2 *Binn.* 294. Here there was no reversal of the judgment, which is the basis of the argument on the other side; but the moment the appeal was taken, the former finding became a nullity, and the proceedings were *de novo*. There was no reversal, for there was nothing to reverse; no abatement, for there was nothing to abate. It is said, that at common law there are no costs, and the complainant must show some statute to entitle him to them. If the common law, before the statute of *Gloucester* be meant, the position is true; but that statute gave costs in all cases in which damages were recovered. It lies, therefore, upon the opposite party to take the case out of the general rule, which has not been done; for it is altogether a gratuitous assumption, that the arbitration law was the standard which the legislature had in view. 1 *Troubat & Haly's Practice*, 221. 2 *Id.* 528, 529.

2. At all events, the company must pay the costs of the foreign jury. They alone have the power to avoid the prejudices of the country by changing the *venire*. It is not, then, a sound construction of the act, that unless they are *entirely* successful, they shall pay the costs of the tribunal to which they exclusively have the privilege of resorting? The verdict of the foreign jury is not the result of the appeal, but of the suit; or rather, of taking the complainant's property by the company. Who, then, is the unsuccessful party? He who does not ultimately succeed in the controversy. Nothing is said in the act, of want of success in the appeal, but want of success generally. Upon the reversal of a judgment in this court,

(The President, Managers, and Company of the Schuylkill Navigation Company *v.* Kittera.)

each party generally pays his own costs; but that is, where the judgment is entirely reversed. But adopting this as the governing principle, whose costs are they? Certainly the costs of the company, incurred by their own act, in the exercise of their exclusive privilege, and for their own benefit.

To the *third* point, the COURT told Mr. *Randall* it was unnecessary to speak.

SMITH, J., (after stating the case,) delivered the opinion of the COURT as follows:—

By the eleventh section of the act of assembly of the 8th of *March*, 1815, it is provided, " That either party may appeal to the court within thirty days after such report may have been filed in the prothonotary's office of the proper county, *in the same manner as appeals are allowed in other cases.*" The language of this clause—the oath, that the party appealing apprehends injustice may be done, the filing of the report, and a certificate of the oath with the prothonotary, the practice of entering into a recognisance, according to the directions of the arbitration act, and the trial by a jury afterwards, all indicate, that the appeal given by this act, is to be considered as analogous to the appeal from the award of arbitrators, and is to be governed and regulated in the same manner. How then are costs, accruing on such appeals to be paid? It has been repeatedly decided, and since the case of *Landis* v. *Shaeffer*, has been the practice and law in every Court of Common Pleas in this state, that if the defendant appeals and obtains a reduction of the amount of the award, the plaintiff is not entitled to recover costs accruing in consequence of the appeal. 4 *Serg. & Rawle,* 196. The Court of Common Pleas, therefore, erred, when they allowed the complainant the amount of his bill, fifty-nine dollars and ninety-eight cents, or his costs since the appeal.

Another error assigned is, in the decision of the court, declaring, that the company was the unsuccessful party within the meaning of the act of assembly, although it had diminished the amount found by the first jury from twelve hundred dollars to eight hundred dollars. By the act of the 1st of *February*, 1821, the daily pay and mileage of the jurors, brought together in consequence of the appeal, are directed to be paid out of the treasury of the county in which the trial may be, and the same shall be reimbursed to the county *by the unsuccessful party*. It is to be remarked, that this act confers a very important privilege exclusively upon the company—the privilege, on appeal, of changing the *venire* to an adjoining county, not bordering on the river *Schuylkill*. The question then is, what is meant by "the unsuccessful party." Is it the unsuccessful party in the appeal, or the unsuccessful party in the whole proceeding, or suit? Had the legislature intended to confine this designation to a part of the entire proceeding, we are war-

ranted in believing, that their language would have been explicit to that effect: they would have said, that the daily pay and mileage of the jurors should be reimbursed to the county by "the unsuccessful party" *in the appeal.* We cannot restrain this general expression, applicable to a party to the suit, where it might have been so easily limited without violating what we believe to have been the equitable intention of the legislature, since we doubt not, that they meant, that the party who, in the event of the suit, was found to have been in fault, should reimburse the county for these expenses; and that meaning, the terms which they have employed, aptly convey. One jury had declared, the injury done by the company's works to the complainant to be twelve hundred dollars; another jury, summoned on the application of the company, declared it to be eight hundred dollars; so that both said there was a just cause of complaint, and disagreed only as to the amount of compensation. But as to the injury done, the complainant succeeded in establishing it before both tribunals, and was, therefore, in fact, the successful party. The company is, in our opinion, the unsuccessful party, within the meaning of the act of assembly, and is to reimburse to the county the daily pay and mileage of the jury. And we think, that the judgment, as to the daily pay and mileage of the jury, should be affirmed, but reversed as to the complainant's bill of costs.